141923. Mr. Solomon, whenever you're ready, take your time. Mr. Solomon, I feel like we've gotten old together. You've been doing these cases a long time. You don't look a day older than me. You're off to a good start, a strong start. I'm going to make it better. There's two principal issues in this black lung case. And after briefing, some months after briefing in this case, the court decided one of them. In particular, we've argued in a couple of our arguments, the second argument in this case, that the Department of Labor's rule-out standard for rebuttal of this 15-year presumption was invalid. You've held in the Bender decision and in the Epling case that it is a valid interpretation by the department. No point in my arguing it, and I ask your permission to withdraw it. But let me just, if you will, so that I don't have to eat my words, if you will indulge me for two minutes, I have something to say about it. And that is that the Department of Labor's standard is engineered in a way that it essentially makes rebuttal of this presumption impossible. Now, they have in their brief some very nice words about how we can meet these burdens and that it's not biologically impossible to prove that no part of anything had to do with the man's disability under this presumption. But the fact of the matter is the department has never agreed, never agreed, that anything rebutts this presumption. They said here that our opinions would have rebutted it, except that they didn't. And the reason they don't is because the department has this preamble, which I'm not arguing about here, but they have the preamble. You're familiar with it. It's been argued about before you before. And what the preamble does is it substitutes risk, and in fact very small risk, as a basis for entitlement for individual causation. There is no individual causation here. We are prohibited from proving it. I think that violates the APA. It violates a lot of things. It's not from Congress. This is strictly something that the Labor Department has done. However, let me say that we have not fully fleshed this out, because we were focusing on this question of whether we have to rule out things, which is not from a statute. It was from an observation in a case in the 1970s in this court. As a matter of fact, it was not the standard in other circuits. It was sort of morphed into a standard. But in any case, there's no point in my making this argument, and I don't think this case is a proper vehicle for it. And so, you know, I'm excused from arguing it, if you agree, and you're excused from writing about it. The second issue, I think, is a much more important one from our point of view, because it's a constitutional issue. The Supreme Court, well, let me say what happened in this case, first of all. This man filed a claim back in 1993. He was totally disabled by respiratory pulmonary impairment in 1993. That's what was determined in the adjudication of his case. And, in fact, it was undeniable. However, in that case in 1993, we proved that the condition that caused his disability was caused by long-term, very heavy cigarette smoking. And he was a very sick guy because of it. He lost because of that. Comes along the Affordable Care Act in Section 1556, and it changes the burden of proof. In 2010? Right. Is that what you're talking about? 2010. So he files another claim, and there's nothing different. I mean, the evidence that was submitted in support of his claim is pretty good. But he had filed it in 2008, his second claim. Well, right, but the rule that was applied. But the 2010 was after 2008. Well, what he did, I think, is not important to this because it's not that he was trying necessarily to take advantage of the 2010 statutory changes. He just got the advantage of the 2010 statutory. He was trying to take advantage of our holding and Lisa Lee Mines. You know that. You don't like it, but that's circuit law. Yes, but we have the Constitution that intercedes here. Lisa Lee Mines does not consider it. Your constitutional point relates to this, what you say, separation of powers? That's right. There was an Article III decision, Article III court. This court, in his first case. 1998. Right. He brought it up here, and he lost. So you think that this proceeding contravenes the mandate of the 1998 case? I think there's no doubt about it. I'm just trying to place it at your point so I can understand it. That's what I'm trying to do. As you know, this is pending on cert in the Supreme Court out of the Sixth Circuit, and I think the explanation of it. The Sixth Circuit ruled against you on this point. Yes. And you filed cert up there. That's right. Filed for cert. That's right. And there was a very interesting, odd decision by Judge Sutton and Judge Kethledge in the Sixth Circuit, which agreed with us and really fleshed out, and we've provided it to you. Did you get a dissent out there? Pardon me? Did you get any dissents in the Sixth Circuit? Any dissenting opinions in the Sixth Circuit? No. No, there was no dissent. He concurred with a dissent. It was something that, according to one of the other judges, is something that's never been done before. I don't know the mechanics of that, but the opinion, I think, stands for itself. It is a correct opinion. The Labor Department, there is no question about the fact that under Ploutt, all that happened here was to change the burden of proof. Nothing else changed. And so the Department of Labor says, well, this created a new cause of action. And the problem with that is the premise that it creates a new cause of action presumes that a cause of action is defined by the remedy, not by the relationship and the harm that is done by one party to another. You have a decision. I admit that I found it in my research. For argument, I'm going to cite it as additional authority. It's from this circuit. It collects the authorities on what defines a cause of action for the Fourth Circuit. Judge Gregory, you wrote it. It's called Puchel versus the United States. And the fact of the matter is that in this court, under that decision, and in the Supreme Court, under all its decisions, and in all of the treatises and everything I've ever read, except for a couple of these Black Lung cases, which were supported by no precedent at all. But are the law of the circuit? Well, the law of the circuit. Lisa Lien says that there are two different causes of action. Now, you might not like that, but our law is we can't overrule it. I'm not asking you to overrule it. You're looking at a very different situation here. I'm not asking you to overrule Lisa Lien's. What I'm asking you to do is to re-evaluate this in connection with the constitutional impediment to what the Labor Department has done. They had no impediment in Lisa Lien. They had no impediment in the Richard case, because those were all administrative actions. But here, there is an impediment, because this reverses. And, as you know, the Supreme Court said in Plow, it doesn't matter whether you like it or you agree with it. This protects us, not the courts, not the various branches of government. This constitutional provision. You know, this is a core principle of American justice. I was involved in the briefing of the Noel Canning case, the recess appointments case, which was a case that involved separation of powers. And I read the Federalist Papers, those papers that were relevant to this. This is such an incredibly central, core premise of constitutional law in this country. You know, what happened, what the Founding Fathers said in the Federalist Papers was that in England, you know, they had judges or magistrates or whatever they call them, and if you didn't like the decision that a judge made, then, and you're a friend of the king, well, you just go to the king, and the king would fix it for you if you had lost that decision. And the Founding Fathers thought that was offensive, and they didn't want it to happen here. And so that's why these premises are not just written into the Constitution, they pervade the Constitution. And that's more important than what happens in these cases that only involve these things that the Labor Department makes up, because none of this is in any statute. This is not from Congress. Congress didn't make it retroactive. Congress didn't allow refiling. Congress never said anything about latency and progressivity, which is a phony premise to start with, and which the Labor Department conceded in the D.C. Circuit. They never own up to it. But the significant thing here is that because of the rule in this circuit under Puschel, in the Supreme Court, in the cases that we've cited, that says that a cause of action, well, let me put it this way, as Judge Sutton said, it wouldn't make any difference whether a cause of action was defined by the or by the harm that was done, because they can't do it. They can't do it for any reason under the separation of powers doctrine. And so the other cases that we've talked about, they don't involve this issue. What would you have us declare unconstitutional? Well, what's unconstitutional is the Labor Department's interpretation of a statute. So you're talking about we declare a regulation unconstitutional? Well, it's even in a regulation. A statute unconstitutional? A regulation unconstitutional? How many of them? Well, the only thing you can do is declare a statute unconstitutional under the interpretation that they've given. That's the interpretation that they present of this statute. It defines, you know, they present it. Or you want us to declare a Labor Department regulation unconstitutional? Well, I think that what you have to do. Or you're just saying their position. Their interpretation leads to an unconstitutional interpretation of the statute. Their position in this case leads to an unconstitutional interpretation. That is correct. Is that what you mean in the brief when you talk about the trickery of the DOL lawyers? Well, they're pretty tricky on these things, but I don't recall it. You say that the government's position is trickery of lawyers. Tricks of lawyering. DOL's arguments reflect tricks of lawyering that ignore core constitutional principles. So you're saying the DOL is tricking you? DOL lawyers are the ones that are doing it by making arguments that violate the Constitution. The interpretation of the statute renders it unconstitutional. Is there positions in this case you want us to declare unconstitutional? Well, I know that's kind of strange, but the fact of the matter is they are interpreting the statute in a way that is unconstitutional. It's kind of a, you know, maybe an Ashwander sort of view. Is this the Affordable Care Act that they're interpreting? You're talking about the 15-year presumption? Right. The 15-year presumption in 2010, in the Affordable Care Act, is being interpreted by the DOL in an unconstitutional manner. In this kind of case? In this case right here. I assume they're similarly situated cases. Well, there are some. Okay. But not necessarily. I'm just trying to figure out what we're supposed to declare unconstitutional. Well, I know that it's difficult, and that's the trickery. Because Congress did none of this. Trickery is a bad term to use against other members of the bar. That jumped out at me when I first looked at it. Okay, well, you know, we live with this all the time. Tricks of lawyering. Good lawyering, we look for from all of you, and we get it in here. I mean, we've had you here before. You're a good lawyer. I don't think we've ever accused you of trickery. Let me say, let me address some of that. First of all, the Department of Labor says this is retroactive. It's not. The Department of Labor says it wastes your credit. It does not. Retroactive statute, in order to meet the requirements of Supreme Court cases, it must expressly. Well, it says there's a presumption if the guy had 15 years of underground coal mining or something, right? But that's not the issue. Right. And you agree he had 16. You stipulate that Mr. Kohler had 16 years underground. I'm not arguing about the facts of that. That's what we're getting at. So there's the presumption. He did it 16 years, and there's a 15-year presumption. But what they did, what happened here. I don't know about it. All right. What happened here is that they changed the burden of proof. That is not something that is permissible. I'm putting the burden over on you. Right. That's the unconstitutional part? That is unconstitutional. All right. Now, what's unconstitutional is that they argue that that is appropriate to change the burden of proof. Although Congress, you know, Congress didn't do that. Congress has language in that statute in 1556 which puts limits on its applicability. Permanent labor throws the limits out the window. They say it's retroactive, inconsistent with all kinds of precedent. You know, and there's no precedent to support the proposition, none, that the remedy defines the cause of action. Other than there's an Iranian terrorist case by a district court judge that you could probably say might do that. But, you know, I don't think we're in the same boat as the Iranian terrorists. We're entitled to have the rule of law applied when it is appropriately applied. And here it is appropriately applied. And what the Constitution says is that the Department of Labor or the Congress, although I don't think the Congress intended to do it. But I'm still, you say that switching the burden violates the Constitution. If you interpret it to reopen the decision of an Article III court, it does. And that's what happened here. In this particular case, that's what happened. And it is undeniably a violation of the Supreme Court's decision in Plout. Now, Congress didn't do it. In Plout, Congress itself tried to reopen cases by changing the statute of limitation. The Supreme Court said they can't do that because what it does, it impinges on Article III powers. Now, like I said, and the Supreme Court said it there, it doesn't matter whether you like that, whether you were perfectly happy to be impinged on. So in your interpretation, Mr. Toler is not entitled to the 15-year presumption, even though he worked 16 years, or 27 years altogether, but 16 years in underground mines. My interpretation is he is not entitled to have a new claim adjudicated from scratch. He's not entitled to a 2010 statute passed by the Congress and signed by the press. Because it's unconstitutional to do that. So now you're back to the statute's unconstitutional. Statute doesn't give him that right. Statute doesn't give him that right, Your Honor. It doesn't do it. The Labor Department gives him that right. The Labor Department went out and made everybody file new claims. And the fact of the matter is that you can do that if it's all administrative, but the fact is that here it is not just administrative. It impinges upon Article III powers. It is something that is expressly prohibited by the Supreme Court in Plout and by separation of powers doctrine. Nothing changed in this case. There's no difference in this case between his first case and his second case, except that the remedy was altered. It wasn't Congress or the President that tricked you all. It was the Labor Department. It was the Labor Department lawyers. I think so. I don't know who else did it, because Congress sure didn't do it. Okay. I'll save the rest of my time for rebuttal. Thank you. Thank you very much. Mr. Smith? May it please the Court, my name is Evan Smith. I'm here representing Clara Sue Toler. She's the widow of Arvis Toler and the administrators of his estate. This is my first time arguing before your court, so it's my pleasure to be here. And I see my most important role here is answering your questions, so please do not hesitate to interject if there is anything I may address. Well, Mr. Smith, I credit you, because most people don't like our questions. Well, I may change my opinion here in a few minutes, but at this moment I'm open for anything. You're from down in Plymouth, Kentucky? Precisely. And Mr. Toler has passed away, is that what you're saying? Yes, he passed away while the case was pending before this court. Okay. So you're representing the widow? Yes, yes, yes. She had to be appointed over his estate so that there wouldn't be a pro se estate here. But for most of these proceedings he didn't have a lawyer. That's right. Most of the record was made by, like, ex parte depositions or something. That's correct. Yeah, he was represented by a non-lawyer employee of a black lung clinic. A layperson. Exactly. And so I work for a non-profit law firm, and we try to get involved when there's complicated legal issues that the miners or the widows will need help with. But to address the legal issue. What do you know about his work history? Yeah, I mean. Do you know his work history? Yeah, my understanding, both from speaking with him and from the record, is that he worked for over 27 years in coal mines in West Virginia. He served in the military for 17 years. He worked for Eastern Associated all that time? Yes. One employer? Yes. Were the mines in McDowell County? I don't know. You don't know where they were? No. Do you know what he did underground? Well, part of the time was, you know, I don't recall precisely what his underground job was. I know at the prep plant, that's where he was. That's above ground. He worked at the preparation plant for 10 or 11 years. But I was trying to find out, and I looked for it and I couldn't find it in his record, exactly what he did underground. You don't know? No, I'd be happy to get back with you about that. No, I'm sorry. I'm sorry. I was just curious. I'd like to find that out about these coal miners. No, you've made me curious as well, and I'm embarrassed that I don't know.  Now, I think one thing that's very striking about the argument that the employer making in this case is, I think that what hopefully was clear there is that they're saying that this en banc decision, Lisa Lee Mines, results in an unconstitutional result under PLOUT. You know the distinction they're making? I mean, do you recognize that Lisa Lee Mines… Yes, I understand that. All right. And so I want to address PLOUT real quick. You know, I wanted to mainly focus on the facts of this case because there are new facts here that are important. But regarding PLOUT, PLOUT has three important exceptions that are built into it. First, PLOUT has a distinction between retrospective versus prospective relief. And what Mr. Toler's new claim does is it does not try to say that, you know, his old claim should have been granted. It just says that from the time his new claim was filed, which is in 2008, before the Affordable Care Act, he's entitled to benefits going forward. Second, PLOUT says that when there are exceptions to finality that are built into the judgment itself, that there's no problem with, you know, those decisions being less final than in others. And that's discussed at page 234 of the… What is the new case? Sorry? You said he has a new case. Oh, a new claim. What's the new claim? His new claim is that as of 2008 that he meets the criteria of entitlement. I'm sorry, I'm… That's not a new claim. You mean because you think the burden has now changed, but the claim is… No. No, at the time he was filing this claim, the burden had not changed. He's saying that his health has worsened, that, you know, and often when coal miners are filing these claims, they don't know what the x-rays are going to show. They don't get to the same finding of the rule of the case that it was based on cigarette smoking and therefore his health has deteriorated for the same very reason that finding was based on. I don't think that, you know, law of the case doctrine applies when you've got, when the question is the miner's health at two different points in time, and that's, I think, implicated by the court's decision. I agree if there is some ideology that exists that's different in terms of causation, but deterioration alone would not make it a different claim. It would be the, unfortunately, the pathology of the problem that he had making him worse, which was determined to be cigarette smoking. It could be emphysema or some pulmonary obstruction, but the mere deterioration doesn't make the claim different, does it? What does Lisa Lee Mines hold with respect to this? Lisa Lee Mines says that, you know, that res judicata is not violated by these two separate claims, that you have two separate causes of action. In this particular, but you've turned it into the abstract, and my colleague is asking you in the specific. So how does that relate to his specific question? To his specific question, I think, first I would say, I think that you're asking a medical question, and that is a question that the doctors need to evaluate. When you hear it, you represent the. No, and I'm happy to address it, but what I'm saying is that there are doctors. I want to address my question. Is there a new etiology, or are you just saying that the pathology of the same causation that was established is just making him, made him worse? I'm saying that. I'm just using your term. You say deteriorate. That's your word, not mine. I'm not trying to dispute in any way what happened in the 90s. What I'm saying is that in 2008, there was a doctor that said that Mr. Toler's lung problems are due to his time in the mines. That's an etiological opinion. And so you can argue, so whether you want to say that, you know, what this doctor was saying in 2008, that doctor did not go back and look at the evidence in the 90s and say, you know, would he have the same opinion then or not? What I can just say is that in this claim, there's evidence supporting the etiology that Mr. Toler asserted. And, you know, when the Department of Labor evaluated his claim in 2008, even before the Affordable Care Act, they found that he proved that he had pneumoconiosis, and that's what was causing his disability. Now, of course, the employer asked a judge to review that, as is their right to do. But my point is that there was new evidence that would prove the etiology that Mr. Toler could not prove before. And then I would like to make one other point about Plout, because I think that this is important to understanding what we're doing in the agency review cases, especially if we want to talk about how our founding fathers would have, you know, I think, considered, you know, modern administrative law and things like this. I think that when this court affirms an agency decision, it's kind of like a habeas case. You are not converting this Article I ALJ decision into an Article III judgment when you say that errors were not so wrong as to be reversible. Just as in a habeas case, just because you deny habeas does not convert into a federal death sentence. You know, I think that makes a big difference for separation of powers because while an Article III judgment does deserve special respect, in this case, you don't have an Article III judgment that says, looking at the evidence de novo, this man's lung disease was not caused by his time in the mines. I see that my time is up. I'd be happy to address any other questions or hand it over to Mr. Goldberg from the Department of Labor. Thank you. Thank you. Mr. Goldberg, do you want to take a crack at Judge Gregory's question? Sure. The new cause of action in this case is not just his deteriorate, that his condition has gotten worse. He is saying that since the denial of his prior claim, pardon me, he has gotten worse. And under Lisa Lee, he has gotten worse? Well, wouldn't that be the expected, unfortunately, wouldn't that be the expected pathology of the obstruction that he had based on what is emphysema or conglomeration of cigarette smoking for so many years? That's what was found to be the cause. So how does getting worse or deterioration, it makes it a different claim? Two points. The fact that his emphysema is, that if he had emphysema, that it was progressive, does not exclude the fact that pneumoconiosis could have developed and worsened. Second, under this court's holding, It was not based on pneumoconiosis. Pneumoconiosis, that's what defined it. It was based solely, that was defined, it was based solely on cigarette smoking. And to say that it's a new claim solely because he's getting worse, but what we know to be a progressive pulmonary problem, how does that make it a different claim? That's why I'm asking this simple question. I have two answers. First, under Lisa Lee, you look at the result of the prior decision, or the prior claim, which was that he did not have pneumoconiosis. You don't look at the evidence underlying it. So when the claim was denied, the first claim was denied, because he didn't have pneumoconiosis. So there was really no final finding regarding the cause of his disability. We know it wasn't pneumoconiosis back then. It doesn't mean that since then, that the disease hasn't manifested and gotten worse and does now contribute to his disability. Well, I think that your use of the word contribute and gotten worse is perhaps not what you want to be saying. Well, I'm saying the disease has gotten worse, not his. The disease has changed. Or that there's a second disease. Assuming that emphysema is what caused his disability in the first claim, that doesn't mean that since then, the effects of coal dust exposure haven't contributed to that. Well, how long did he work in the mines after the decision in 93? He did not return to the mines. Exactly. He didn't. So there was no more exposure to coal dust. Right? Correct? That's correct. All right. So there was a finding in 93 that his problem was not related to coal dust exposure. It was related to cigarette smoking. And what you're saying is that now he's gotten worse from what we knew. It would be different, I suppose, if you had a finding that, no, he's not sick. Not only is it not pneumoconiosis, he's not even sick. And then he gets sick, and you say, well, it must be something new because we didn't even find anything was wrong with him. Now something is wrong with him. That's different. But based on the finding of that case, we know something, unfortunately, is wrong with him. And that is a progressive disease, and the pathology is consistent with that. But to say now, at least of mine, is because we know race to the carter doesn't, but it's not holding any fact decided against him so much as it is. It seems to me there's nothing that's new other than that he's getting worse. That's true, but pneumoconiosis can be a latent and progressive disease. Now you've heard Mr. Solomon say ---- He could have not had it back then at the first claim and have it now. Exactly. Now we know that it's not often progressive, but it can be progressive. It is, and you heard Mr. Solomon say it's a myth, but that's not what he said in the NMA case. And I'll read this here. He said ---- It doesn't matter what Mr. Solomon said. In all respect, it matters what the law is. But he said that he conceded here, he submitted medical evidence, that up to 8% of pneumoconiosis cases are latent and progressive. Submitted a medical study saying that. I was going to return to plot. The difference between this case and plot, as Mr. Smith pointed out, this is a separate claim. In plot, Congress tried to reopen, finally denied claims. The same claims and the Supreme Court rightfully struck it down. This is the same thing. He is not relitigating, he is not reopening his earlier claim. Our regulations do not permit that. Say if benefits were awarded on a subsequent claim, benefits cannot begin until after, cannot commence from, the onset date is not until after the denial of the first claim. This is simply a separate cause of action. The onset date as to this proceeding would be 2008? Well, it would be ALJ's decision, but yes, it would be. Legally, it is impermissible to place it before the denial of his prior claim. The second point I had was ---- Is there any science that does that? We just say that, magically, it's that afterwards. Is there science that says ---- What science that says when the onset was for pneumoconiosis in this case? Either clinical or medical or whatever. Was there finding of opacities and later on that we were ---- Oh, the ---- Now we can see them better on an x-ray. What was it? The x-ray evidence in the second claim is positive for pneumoconiosis. The ALJ found that. It wasn't in the first one? In the first claim, the evidence was negative. It was negative. And in the second claim, the ALJ found the weight of the x-ray evidence positive for pneumoconiosis. And, again, the presumption allowed him to establish pneumoconiosis, but there is new evidence underlying that change of condition. There's Dr. Burrell's opinion. The ALJ found his conclusion logical while rejecting the opinions from Eastern's experts. And there is the positive x-ray evidence, and there is, as Mr. Smith pointed out, the fact that the district director awarded the subsequent claim in 2008 prior to Congress enacting the ACA. And Bailey, as I mentioned in her brief in the Seventh Circuit, holds that the 15-year presumption is part of the definition of the elements of entitlement. You can't separate them, and that's why you can rely on the — or why Mr. Tolar could rely on the 15-year presumption to establish the missing condition of entitlement, as long as there is new evidence underlying that finding. Would the statute, the 15-year presumption, standing alone give him a new claim? No, he needs new evidence for the new claim. I don't think there's any question about that. And there is new evidence here supporting his new second claim. And I'm already out of time. Thank you very much. Thank you very much. Mr. Thelman? First, I'll correct a couple of things that the Labor Department said here. First of all, although they presented new x-ray evidence, the ALJ did not find that it was positive for pneumoconiosis. The ALJ never considered the CT scans. What he said, it's on JA30 in the appendix, is that he found it was conflicting and thus inconclusive. That's number one. Number two, they stood up in the D.C. Circuit and said that pneumoconiosis, the common forms of pneumoconiosis are not latent. You're saying the DOL is talking out of both sides of their mouth in different courts? Absolutely. Absolutely. We've cited that. The thing is they stood up and they said it to the D.C. Circuit, and the D.C. Circuit upheld the regulation solely because of their concession. So the thing is that he's up here saying it's latent. Just pause a second. I don't care what the government said or what you said. The science now is that there is progressive pneumoconiosis. It is possible. It is not likely. Isn't that correct? No. It's never possible. Is that your position? No. And Lisa Lee was a case where it was possible. It's never possible, though. It is never possible that this kind of pneumoconiosis in this case is latent. There is not one single scientific article, research that's peer-reviewed in the world, because I've looked through this, that holds that COPD in the absence of exposure is a latent condition arising out of mining. Not one single article. And that's why they had to concede it in the D.C. Circuit. And it's annoying that the Department's up here saying this man got pneumoconiosis, got this COPD due to his mining, you know, 20 years after leaving. Let me say what he did do. What he didn't say is that the man who was already disabled in 1993 didn't get any more mining exposure. He hadn't had it in a while, but he sure continued to smoke for a while, for I believe a decade or so after that. And so, you know, this is a made-up, this is totally fictional. The award here is based principally here, and this is really the main thing, it is still based upon an unconstitutional and unintended interpretation of a statute that was not supposed to do what it did in this case. Any questions? I think we understand your position. I recommend Judge Sutton's opinion. It is a very sound opinion. Pardon? I'm sorry? I recommend Judge Sutton's opinion in Hill to you. It is a very sound, solid opinion. In general, I find those opinions that agree with my position when I was a lawyer to be sound. Well, it's a well-read opinion. Read it. I mean, it's a darn good opinion. How do you know we haven't read it? Would you like to take a break? Yes, we'll come down and greet the lawyers, and then we'll take a short recess. This honorable court will take a brief recess.
judges: Diana Gribbon Motz, Robert B. King, Roger L. Gregory